**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

JAMES FLAHERTY,

      Plaintiff,

v.                                                                    Case No.:_____

AMAZON.COM, INC., and SHENZHEN
TEJIALI TECHNOLOGY CO., LTD. d/b/a
iHEAT, a foreign corporation,

      Defendants.

---

**COMPLAINT**

---

Plaintiff, JAMES FLAHERTY ("Plaintiff"), hereby sues Defendants, AMAZON.COM,

INC. ("Amazon") and SHENZHEN TEJIALI TECHNOLOGY CO., LTD. d/b/a iHEAT ("iHeat")

(together, "Defendants") and alleges as follows:

**NATURE OF ACTION**

1.      This is a product liability action under the New Jersey Product Liability Act (the

"NJPLA") and common law arising out of serious and permanent injuries Plaintiff suffered while

using a lithium battery heated shoe in-sole manufactured by iHeat and sold and distributed by

Amazon.

**PARTIES**

2.      Plaintiff is a citizen and resident of the State of New Jersey.

3.      Amazon is a foreign corporation organized under the laws of the State of Delaware,

with its principal place of business located at 410 Terry Avenue, North, Seattle, Washington 98109.

4.    Amazon operates an online business that sells innumerable items throughout the State of New Jersey, which include the . Plaintiff purchased the Subject In-Soles from Amazon online and they were delivered to his home from the Amazon fulfillment center though the Fulfillment by Amazon (FBA) regime discussed below.

5.    iHeat is a citizen of China, and according to its website, maintains an office address at 29-31,12F, Fuji properties building, No. 6018, Longgang Street, Longgang District, Shenzhen, Guangdong Province, China.

6.    iHeat has no physical office or operations in the territorial United States.

7.    iHeat relies on Amazon to list, sell, distribute, and/or deliver its products to consumers in the United States.

## JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiff and each of the Defendants are completely diverse, and the amount in controversy exceeds $75,000, exclusive of attorneys' fees, interest, and costs.

9.    Personal jurisdiction is proper over Amazon because it purposely availed itself of doing business in the state of New Jersey through its extensive sales, advertising, distribution, and fulfillment network throughout the state of New Jersey, and its specific actions of selling and delivering the Subject In-Soles to Plaintiff and collecting payment from Plaintiff.

10.    Personal jurisdiction is proper over iHeat because it purposely availed itself of doing business in New Jersey by:

    a.    designing the Subject In-Soles for use and distribution within the U.S., including New Jersey;

    b.    placing the Subject In-Soles into the stream of commerce in the United States, with knowledge that such products would be distributed to, sold, and used in New Jersey;

c. establishing a U.S. distribution scheme by which Amazon would serve as iHeat's conduit for sales of iHeat's products in all fifty states, including New Jersey;

d. maintaining a website for purposes of marketing to U.S. consumers, including consumers in the state of New Jersey; and

e. committing the tortious acts described herein that caused an injury inside the state of New Jersey.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) as the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

## GENERAL ALLEGATIONS

### A.    *Fulfillment by Amazon.*

12. Amazon is a distributor under federal and state law for products sold under the "Fulfilled By Amazon" ("FBA") program.

13. The Subject In-Sole was sold no differently than a product sold through traditional retail.

14. Amazon operates an online marketplace for consumers – amazon.com – that includes listings for consumer products, as that term is defined at Section 3(a)(5) of the CPSA, 15 U.S.C. § 2052(a)(5).

15. Through amazon.com, Amazon offers an e-commerce marketplace in which Amazon and merchants can connect with consumers via the internet, expanding sales opportunities beyond traditional brick-and-mortar and direct retail sales channels.

16. Merchants enter a business arrangement with Amazon to participate in Amazon's consumer marketplace, which includes a Business Services Agreement and, for Amazon's FBA program, FBA policies and requirements. Products offered for sale on amazon.com appear on

webpages known as product listings and are identified by Amazon Standard Identification Numbers, or ASINs, assigned by Amazon.

17.    Amazon offers consumer products for sale on amazon.com as a distributor through its FBA program, and through its Merchant Fulfilled Network ("MFN"), for which merchants generally ship products directly to consumers.

18.    The majority of Amazon's sales occur through its FBA program including in this case. The sale of the Subject In-Soles occurred through the FBA program.

19.    Amazon offers a variety of services in furtherance of bringing its FBA products to consumers' doorsteps. These services include, but are not limited to, storing FBA products at Amazon fulfillment centers, stocking and maintaining an inventory of FBA products, and administering additional sorting and shipping services, including the use of Amazon employees to interact with the product, categorize it with the help of computers and robots, label it, and move it through the distribution process.

20.    Additional services include Amazon's retrieval of FBA products from the merchant's inventory, placement of FBA products in a shipping container, delivery of FBA products directly to consumers' doorsteps in Amazon delivery vehicles or via a shipping carrier Amazon procures, approval of all FBA ASINs, provision of 24/7 customer service, and processing all FBA product returns.

21.    Amazon maintains electronic records that track inventory of all products stored in Amazon Fulfillment Centers or other Amazon warehouses or facilities. Using these electronic records, Amazon employees are able to retrieve and ship products ordered by consumers on amazon.com.

22.     As part of the FBA program, Amazon ships FBA products to consumers who place orders on Amazon's online marketplace. Amazon reserves the right to combine products from inventories of multiple merchants into one shipment. Amazon employees, with the assistance of electronic records and automation at the facilities, physically ship or cause to be shipped through a shipping carrier the FBA products ordered by consumers.

23.     Amazon's contracts with merchants participating in the FBA program state that the merchants retain legal title to their products even while the products are stored, sorted, and delivered to consumers from Amazon's facilities.

24.     However, these contracts also state that when consumers return an FBA product, the consumers ship the products back to Amazon, not the merchant.

25.     When a product is returned, Amazon inspects the FBA product and determines whether the product can be resold.

26.     If Amazon determines that the FBA product can be resold, Amazon returns the product to the inventory at the applicable Amazon facility.

27.     If Amazon determines that the product cannot be resold, the merchant may choose to have it sent to its own facility.

28.     The contracts between Amazon and merchants also state that Amazon: (a) has the authority to format the product's listing on its online marketplace, which includes how a listing is displayed to consumers; (b) may reject products that Amazon determines are illegal, sexually explicit, defamatory, or obscene; (c) will require merchants to communicate with their customers exclusively through Amazon's platform; and (d) shall process payments for all purchases of the FBA products, charge the payment instrument designated in each individual consumer's account,

and remit the agreed-upon monies to the merchant minus the service fees due to Amazon set forth in the applicable contracts.

29.     Upon information and belief, though the amount varies depending on the product, Amazon's FBA fees can amount to as much or more than 40% of the sales price of a given product.

30.     In addition, Amazon polices the prices charged by merchants listing products on amazon.com through its Fair Pricing Policy, which gives Amazon the right to take action against merchants for pricing that harms consumer trust.

31.     The Fair Pricing Policy provides that "[p]ricing practices that harm customer trust include, but are not limited to: . . . setting a price on a product or service [on amazon.com] that is significantly higher than recent prices offered on or off Amazon."

32.     Consumers who purchase FBA consumer products on amazon.com may reasonably believe they are purchasing the products from Amazon.

33.     Through the actions described herein, Amazon is a "distributor" of a "consumer product" that is "distributed in commerce," for its FBA products as those terms are defined in the CPSA. In sum, Amazon acts as a "distributor" of its FBA products by: (a) receiving delivery of FBA consumer products from a merchant with the intent to further distribute the product; (b) holding, storing, sorting, and preparing for shipment FBA products in its warehouses and fulfillment centers; and (c) distributing FBA consumer products into commerce by delivering FBA products directly to consumers or to common carriers for delivery to consumers.

34.     With regard to the Subject In-Soles specifically, Amazon has acknowledged that it is responsible for the fulfillment process. Specifically, Amazon has removed negative reviews of the Subject In-Soles, with the explanation that "This item was fulfilled by Amazon, ***and we take responsibility for this fulfillment experience***." (emphasis added).

35. Below is a screen capture from https://www.amazon.com/sp?ie=UTF8&seller=A309WSWHFRA1JU&asin=B0BN3VS6NY&ref_=dp_merchant_link&isAmazonFulfilled=1:



36. Upon information and belief, the Subject In-Soles were sold and distributed to Plaintiff by Amazon through the FBA program described above.

**B.    *The Subject In-Soles.***

37. The Subject In-Sole is a shoe in-sole manufactured by iHeat and sold through Amazon.

38. The Subject In-Sole is designed to have a rechargeable heating element under the ball and arch of the user's feet that warms the feet while still inside a shoe or boot.



39.    The heating element is powered through a small internal lithium battery.

40.    According to the Amazon description, under the heading "Long-Lasting Rechargeable Battery," the Subject In-Sole is a "rechargeable heated insole" that is "crafted with a soft EVA foam sole and velvet upper." It contains a "3.7V 3500mAh battery" that "offers up to 10+ hours of continuous warmth, ensuring your feet stay toasty during outdoor activities."

41.    The description further states that "these heated boot insoles rapidly warm, making them perfect for extreme cold weather activities," and that the user can "effortlessly adjust the heat settings with the included remote control."

42.    Other advertised features include "High Temperature up to 149*F," "Large Heating Surface 5.5x8cm," and "US Lifetime Support."



Page 8 of 20

43.   The Subject In-Soles are charged or recharged through the use of a USB-C charging port. The Subject In-Soles also have an "ON/OFF" button and an LED indictor light to indicate to the user whether the Subject In-Sole is powered.



44.   The Subject In-Sole also comes with a wireless remote control with an "ON/OFF" button, and three buttons that will set the Subject In-Soles to preset heating modes or high, medium, or low.



45.   The Subject In-Soles come with a small insert, but such insert contains virtually no warnings and states nothing about the risk of fire.

**C.   *The Incident.***

46.   Plaintiff purchased the Subject In-Soles on Amazon through the FBA program, and Amazon distributed and delivered the Subject In-Soles to Plaintiff in New Jersey.

47. On January 25, 2024, Plaintiff was wearing the Subject In-Soles inside of his boots to warm his feet. Plaintiff had owned the Subject In-Soles for approximately three (3) weeks. While wearing the boots, Plaintiff was engaged in ordinary activity in the course of his employment as an electrician.

48. However, instead of comfortably warming his feet, the lithium battery within the Subject In-Soles suddenly and without warning caught fire. The fire was caused by a defect in the design or manufacture of the Subject In-Sole. The fire caused by the Subject In-Soles severely burned and disfigured Plaintiff's foot (the "Incident").

49. At the time of the Incident:

   a. the Subject In-Soles were in the same condition as when they left the manufacturer's control;

   b. Plaintiff had made no alterations or changes to lithium battery or heating elements within the Subject In-Soles; and

   c. Plaintiff was using the Subject In-Soles for their ordinary and intended purpose of warming his feet in cold weather.

50. The Subject In-Soles contain no warning regarding a fire risk associated with the Subject In-Soles.

51. As a direct and proximate result of the Subject In-Soles catching fire, Plaintiff suffered physical injuries, pain and suffering, mental anguish, and other injuries compensable by law.

## COUNT I
### Violation of the NJPLA – Design Defect
### (against Amazon)

52. Plaintiff re-alleges and incorporates by reference allegations 1 through 51 above, as through fully stated herein.

53.     A product is defectively designed under the NJPLA if it fails to perform in accordance with the consumer or user's reasonable expectations. Stated differently, a design defect exists where a product does not safely perform the job or function of which it was made, contrary to the customer or user's reasonable expectations.

54.     Alternatively, a product may also be shown to be defective where it is not reasonably fit, suitable, and safe for its intended purposes under a risk-utility analysis, or where the foreseeable risks of harm could have been reduced or avoided by the adoption of a reasonable safer design, the omission of which renders the product not reasonably safe.

55.     The Subject In-Soles utilized by Plaintiff were defective by virtue of their failure to meet the reasonable expectations of Plaintiff as an intended and foreseeable user, and Amazon breached its duty to Plaintiff by failing to adequately ensure the Subject In-Soles were designed to meet those expectations.

56.     Alternatively, the Subject In-Soles utilized by Plaintiff were defective by virtue of their failure to incorporate a reasonably alternative design that was available and knowable to Amazon.

57.     The defective design of the Subject In-Soles existed at the time the Subject In-Soles left the possession, custody, or control of Amazon.

58.     At the time of the Incident, Plaintiff was not misusing the Subject In-Soles, nor had the Subject In-Soles been substantially altered in any way that was not reasonably foreseeable.

59.     Plaintiff was a foreseeable user of the Subject In-Soles.

60.     As a direct result of the defective design of the Subject In-Soles, Plaintiff suffered injuries compensable by law.

WHEREFORE, Plaintiff, JAMES FLAHERTY, demands judgment against Defendant, AMAZON.COM, INC., for all injuries and damages recoverable under New Jersey law, including without limitation, all economic damages, non-economic damages, pain and suffering, mental anguish, physical disfigurement, loss of enjoyment of life, pre-judgment interest, post-judgment interest, and costs.

### COUNT II
**Violation of the NJPLA – Manufacturing Defect**
**(against Amazon)**

61.     Plaintiff re-alleges and incorporates by reference allegations 1 through 51 above, as through fully stated herein.

62.     This cause of action is stated in the alternative to Count I or any other count alleging a design defect associated with the Subject In-Sole. *See* Fed. R. Civ. P. 8(d)(2), (3).

63.     A product is defective where, because of a flaw that occurred during the production process, the product was rendered unsafe, and the unsafe aspect of the product was a substantial factor in bringing about the injury of the plaintiff.

64.     The Subject In-Soles suffered from a manufacturing defect that deviated from the intended design specifications or performance standards for the Subject In-Soles.

65.     The manufacturing defect in the Subject In-Soles existed before the Subject In-Soles left the control of Amazon.

66.     At the time of the Incident, Plaintiff was not misusing the Subject In-Soles, nor had the Subject In-Soles been substantially altered in any way that was not reasonably foreseeable.

67.     Plaintiff was a foreseeable user of the Subject In-Soles.

68.     As a direct result of the defective design of the Subject In-Soles, Plaintiff suffered injuries compensable by law.

WHEREFORE, Plaintiff, JAMES FLAHERTY, demands judgment against Defendant, AMAZON.COM, INC., for all injuries and damages recoverable under New Jersey law, including without limitation, all economic damages, non-economic damages, pain and suffering, mental anguish, physical disfigurement, loss of enjoyment of life, pre-judgment interest, post-judgment interest, and costs.

**<u>COUNT III</u>**
**Violation of the NJPLA – Failure to Warn/Warning Defect**
**(against Amazon)**

69.    Plaintiff re-alleges and incorporates by reference allegations 1 through 51 above, as through fully stated herein.

70.    As a "product seller" pursuant to N.J.S. § 2A:58C-8, Amazon had a duty to provide adequate warning and instructions about the dangers the Subject In-Soles present or may present. Amazon had this duty even if the Subject In-Soles were perfectly designed and manufactured.

71.    To be adequate under the NJPLA, warnings or instructions must be the kind of warning or instruction that a reasonably prudent manufacturer or seller in the same or similar circumstances would have provided to people intended to use the product.

72.    As the seller of the Subject In-Soles, Amazon had a duty to be reasonably familiar with and know reliable information available or reasonably obtainable in the industry and is therefore deemed an expert in the field.

73.    Here, the Subject In-Soles were defective by virtue of their failure to contain an adequate warning regarding the risk or potentiality of catching fire while under ordinary and intended use, and Amazon breached its duty to Plaintiff by failing to include or attach an appropriate warning regarding the risk of fire and injury resulting therefrom.

74.     Amazon's failure to adequately warn existed before the Subject In-Soles left the control of Amazon.

75.     At the time of the Incident, Plaintiff was not misusing the Subject In-Soles, nor had the Subject In-Soles been substantially altered in any way that was not reasonably foreseeable.

76.     Plaintiff was a foreseeable user of the Subject In-Soles.

77.     Plaintiff would have followed and heeded adequate warnings or instructions from Amazon if they had been provided.

78.     As a direct and proximate result of Amazon's failure to warn and breach of its duty to include an adequate warning, Plaintiff suffered injuries compensable by law.

WHEREFORE, Plaintiff, JAMES FLAHERTY, demands judgment against Defendant, AMAZON.COM, INC., for all injuries and damages recoverable under New Jersey law, including without limitation, all economic damages, non-economic damages, pain and suffering, mental anguish, physical disfigurement, loss of enjoyment of life, pre-judgment interest, post-judgment interest, and costs.

**COUNT IV**
**Negligence**
**(against Amazon)**

79.     Plaintiff re-alleges and incorporates by reference allegations 1 through 51 above, as through fully stated herein.

80.     New Jersey also recognizes common law duties of manufacturers, processors, suppliers, etc. to:

    a.  make reasonable inspection and tests of its products for the purpose of locating either obvious or hidden but discoverable defects in the products it sells or distributes; and

b. warn buyers or users of hidden dangers or concealed limitations of its product where the use of its product is dangerous to a user who is ignorant of such hidden dangers.

81. As a seller and distributor of the Subject In-Soles, Amazon owed these duties to Plaintiff under New Jersey law with respect to the Subject In-Sole, including specifically (1) to adequately review, examine, inspect, and test the Subject In-Soles, both before offering them for sale on its platform and before delivery of the Subject In-Soles to Plaintiff, and (2) to warn Plaintiff and other buyers or users of the Subject In-Soles of the hidden dangers associated therewith, including the danger associated with overheating, malfunctions, and catching fire while in use.

82. Amazon breached these duties to Plaintiff by failing to adequately review, examine, inspect, and test the Subject In-Soles before sale to Plaintiff, or to ensure that Plaintiff was warned of the hidden dangers and concealed limitations of the Subject In-Soles.

83. As a direct and proximate result of Amazon's breaches of duty, Plaintiff suffered injuries compensable by law.

WHEREFORE, Plaintiff, JAMES FLAHERTY, demands judgment against Defendant, AMAZON.COM, INC., for all injuries and damages recoverable under New Jersey law, including without limitation, all economic damages, non-economic damages, pain and suffering, mental anguish, physical disfigurement, loss of enjoyment of life, pre-judgment interest, post-judgment interest, and costs.

**COUNT V**
**Violation of the NJPLA – Design Defect**
**(against iHeat)**

84. Plaintiff re-alleges and incorporates by reference allegations 1 through 51 above, as through fully stated herein.

85.    A product is defectively designed under the NJPLA if it fails to perform in accordance with the consumer or user's reasonable expectations. Stated differently, a design defect exists where a product does not safely perform the job or function of which it was made, contrary to the customer or user's reasonable expectations.

86.    Alternatively, a product may also be shown to be defective where it is not reasonably fit, suitable, and safe for its intended purposes under a risk-utility analysis, or where the foreseeable risks of harm could have been reduced or avoided by the adoption of a reasonable safer design, the omission of which renders the product not reasonably safe.

87.    The Subject In-Soles utilized by Plaintiff were defective by virtue of their failure to meet the reasonable expectations of Plaintiff as an intended and foreseeable user, and iHeat breached its duty to Plaintiff by failing to adequately ensure the Subject In-Soles were designed to meet those expectations.

88.    Alternatively, the Subject In-Soles utilized by Plaintiff were defective by virtue of their failure to incorporate a reasonably alternative design that was available and knowable to iHeat.

89.    The defective design of the Subject In-Soles existed at the time the Subject In-Soles left the possession, custody, or control of iHeat.

90.    At the time of the Incident, Plaintiff was not misusing the Subject In-Soles, nor had the Subject In-Soles been substantially altered in any way that was not reasonably foreseeable.

91.    Plaintiff was a foreseeable user of the Subject In-Soles.

92.    As a direct result of the defective design of the Subject In-Soles, Plaintiff suffered injuries compensable by law.

WHEREFORE, Plaintiff, JAMES FLAHERTY, demands judgment against Defendant, SHENZHEN TEJIALI TECHNOLOGY CO., LTD. d/b/a iHEAT, for all injuries and damages recoverable under New Jersey law, including without limitation, all economic damages, non-economic damages, pain and suffering, mental anguish, physical disfigurement, loss of enjoyment of life, pre-judgment interest, post-judgment interest, and costs.

### COUNT VI
**Violation of the NJPLA – Manufacturing Defect**
**(against iHeat)**

93.     Plaintiff re-alleges and incorporates by reference allegations 1 through 51 above, as through fully stated herein.

94.     This cause of action is stated in the alternative to Count V or any other count alleging a design defect associated with the Subject In-Sole. *See* Fed. R. Civ. P. 8(d)(2), (3).

95.     A product is defective where, because of a flaw that occurred during the production process, the product was rendered unsafe, and the unsafe aspect of the product was a substantial factor in bringing about the injury of the plaintiff.

96.     The Subject In-Soles suffered from a manufacturing defect that deviated from iHeat's intended design specifications or performance standards for the Subject In-Soles.

97.     The manufacturing defect in the Subject In-Soles existed before the Subject In-Soles left the control of iHeat.

98.     At the time of the Incident, Plaintiff was not misusing the Subject In-Soles, nor had the Subject In-Soles been substantially altered in any way that was not reasonably foreseeable.

99.     Plaintiff was a foreseeable user of the Subject In-Soles.

100.    As a direct result of the defective design of the Subject In-Soles, Plaintiff suffered injuries compensable by law.

WHEREFORE, Plaintiff, JAMES FLAHERTY, demands judgment against Defendant, SHENZHEN TEJIALI TECHNOLOGY CO., LTD. d/b/a iHEAT, for all injuries and damages recoverable under New Jersey law, including without limitation, all economic damages, non-economic damages, pain and suffering, mental anguish, physical disfigurement, loss of enjoyment of life, pre-judgment interest, post-judgment interest, and costs.

## COUNT VII
### Violation of the NJPLA – Failure to Warn/Warning Defect
### (against iHeat)

101.    Defendant re-alleges and incorporates by reference allegations 1 through 51 above, as through fully stated herein.

102.    Under the NJPLA, iHeat had a duty to provide adequate warning and instructions about the dangers the Subject In-Soles present or may present.  iHeat had this duty even if the Subject In-Soles were perfectly designed and manufactured.

103.    To be adequate under the NJPLA, warnings or instructions must be the kind of warning or instruction that a reasonably prudent manufacturer or seller in the same or similar circumstances would have provided to people intended to use the product.

104.    As the manufacturer of the Subject In-Soles, iHeat had a duty to be reasonably familiar with and know reliable information available or reasonably obtainable in the industry and is therefore deemed an expert in the field.

105.    Here, the Subject In-Soles were defective by virtue of their failure to contain an adequate warning regarding the risk or potentiality of catching fire while under ordinary and intended use, and iHeat breached its duty to Plaintiff by failing to include or attach an appropriate warning regarding the risk of fire and injury resulting therefrom.

106.   iHeat's failure to adequately warn existed before the Subject In-Soles left the control of iHeat.

107.   At the time of the Incident, Plaintiff was not misusing the Subject In-Soles, nor had the Subject In-Soles been substantially altered in any way that was not reasonably foreseeable.

108.   Plaintiff was a foreseeable user of the Subject In-Soles.

109.   Plaintiff would have followed and heeded adequate warnings or instructions from iHeat if they had been provided.

110.   As a direct result of iHeat's failure to warn and breach of its duty to include an adequate warning, Plaintiff suffered injuries compensable by law.

WHEREFORE, Plaintiff, JAMES FLAHERTY, demands judgment against Defendant, SHENZHEN TEJIALI TECHNOLOGY CO., LTD. d/b/a iHEAT, for all injuries and damages recoverable under New Jersey law, including without limitation, all economic damages, non-economic damages, pain and suffering, mental anguish, physical disfigurement, loss of enjoyment of life, pre-judgment interest, post-judgment interest, and costs.

## COUNT VIII
### Negligence
### (against iHeat)

111.   Plaintiff re-alleges and incorporates by reference allegations 1 through 51 above, as through fully stated herein.

112.   New Jersey also recognizes common law duties of manufacturers, processors, suppliers, etc. to:

    a.  Exercise reasonable care in the design and manufacture of a product;

    b.  make reasonable inspection and tests of its products for the purpose of locating either obvious or hidden but discoverable defects in the products it sells or distributes; and

    c.    warn buyers or users of hidden dangers or concealed limitations of its product where the use of its product is dangerous to a user who is ignorant of such hidden dangers.

113.    As a designer and manufacturer of the Subject In-Soles, iHeat owed these duties to Plaintiff under New Jersey law with respect to the Subject In-Sole, including specifically (1) design and manufacture the Subject In-Soles with reasonable care, (2) to adequately review, examine, inspect, and test the Subject In-Soles, both before offering them for sale on its platform and before delivery of the Subject In-Soles to Plaintiff, and (3) to warn Plaintiff and other buyers or users of the Subject In-Soles of the hidden dangers associated therewith, including the danger associated with overheating, malfunctions, and catching fire while in use.

114.    iHeat breached these duties to Plaintiff by failing to exercise reasonable care in designing and manufacturing the Subject In-Soles, failing to adequately review, examine, inspect, and test the Subject In-Soles before sale to Plaintiff, and failing to ensure that Plaintiff was warned of the hidden dangers and concealed limitations of the Subject In-Soles.

115.    As a direct and proximate result of iHeat's breaches of duty, Plaintiff suffered injuries compensable by law.

WHEREFORE, Plaintiff, JAMES FLAHERTY, demands judgment against Defendant, SHENZHEN TEJIALI TECHNOLOGY CO., LTD. d/b/a iHEAT, for all injuries and damages recoverable under New Jersey law, including without limitation, all economic damages, non-economic damages, pain and suffering, mental anguish, physical disfigurement, loss of enjoyment of life, pre-judgment interest, post-judgment interest, and costs.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all matters set forth in this Complaint.